## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

EDWARD C. GRIMES,
    Petitioner,

v.
                               **Civil Action No. 1:14-cv-13**

KAREN PSZCZOLKOWSKI,
    Respondent.

### REPORT AND RECOMMENDATION

On January 21, 2014, Edward C. Grimes ("Petitioner"), proceeding *pro se*, filed a petition pursuant to 28 U.S.C. § 2254, challenging his state court conviction in Berkeley County, West Virginia. That same day, the Clerk of the Court sent him a Notice of Deficient Pleading, instructing Petitioner to file: (1) an application to proceed *in forma pauperis* or the filing fee of $5.00; (2) his Prisoner Trust Account Report; (3) his ledger sheets; and (4) the Court-approved Petition. (Docket No. 4.) Petitioner filed those items, as well as a motion for leave to file excess pages, on February 10, 2014. (Docket Nos. 6, 7, 8, 9.) On February 13, 2014, the undersigned granted Petitioner leave to proceed *in forma pauperis* and granted his motion to exceed the page limitation. (Docket Nos. 10 and 11.)

On March 26, 2014, the undersigned ordered Respondent to show cause as to why Petitioner's petition should not be granted. (Docket No. 13.) Respondent filed a motion for extension of time on April 9, 2014 (Docket No. 15), which the undersigned granted on April 10, 2014 (Docket No. 16). On June 9, 2014, Respondent filed an Answer, motion for summary judgment, and memorandum in support. (Docket Nos. 20, 21, 22.) The Court then issued notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), informing Petitioner of his right to file responsive material. (Docket No. 23.) On June 26, 2014, Petitioner filed a motion for extension

of time to file (Docket No. 28), which the undersigned granted on June 27, 2014 (Docket No. 29).

On September 25, 2014, Petitioner filed a response to the Answer, a response to the motion for

summary judgment, and a response to the memorandum in support. (Docket Nos. 31, 32, 33.)

## I.    Factual and Procedural Background

### A.    Trial Court Proceedings

In February 2006, a Grand Jury attending Berkeley County, West Virginia, returned an

Indictment charging Petitioner with one count of murder for the killing of Ronald Kidrick. (Docket

No. 21-1 at 97.) On March 10, 2006, Petitioner's counsel moved the Circuit Court for Berkeley

County to set bond. The trial court held a bond hearing on March 20, 2006, at which time

Petitioner's motion for bond to be set was denied. (Id. at 99.) Petitioner signed a plea agreement

to the lesser-included offense of second degree murder on May 10, 2006; however, he decided to

withdraw his plea prior to its acceptance by the Circuit Court for Berkeley County because the

victim's family objected to the agreed-upon sentence of twelve (12) years. (Id. at 98, 100.) On

November 16, 2006, a jury found Petitioner guilty of second degree murder. (Id. at 98.) The

evidence presented at trial was as follows:

> In July 2005, Mary Davis was living with her three children at a motel known as the
> Relax Inn on Winchester Avenue just south of Martinsburg, West Virginia. Two of
> the children, Christopher, age 12, and Trejon, age 6, were present during the events
> in question. Trejon is the son of the victim, Ronald L. Kidrick. The third child,
> Jordan, was not present. The Petitioner, Edward C. Grimes, was involved in a
> relationship with Mary Davis and lived at the motel from time to time.
>
> In the early morning hours of July 30, 2005, a friend brought Michael Moneypenny
> to Mary's room at the motel. Moneypenny, a co-worker of Mary, was intoxicated
> and had been beaten and pepper-sprayed in a bar. He was placed in a bed, and Mary
> was cleaning his wounds when the appellant entered the room. Moneypenny was a
> stranger to Petitioner. Petitioner began striking Moneypenny with his fist and with
> a handgun in the presence of Mary, Christopher, and Trejon. Moneypenny was

ejected from the room, and he collapsed outside.

Chris and Trejon went in and out of the motel room to check on Moneypenny. In addition, they made a number of telephone calls to Kidrick, several miles away in Shepherdstown, West Virginia, because Kidrick was supposed to pick them up to attend an upcoming family gathering. During a final call, Chris informed Kidrick that Petitioner was present, and Kidrick expressed reluctance to come to the motel. Petitioner then took the telephone and said to Kidrick, "Don't use me as a scapegoat. If you want some, come and get some." Soon after, Petitioner called a friend, Gabriel "Ziggy" McGuire, for a ride away from the motel. In the meantime, Kidrick asked a friend by the name of Chris Petrucci to drive him from Shepherdstown to the motel. It is unclear whether Kidrick went to the motel to pick up the children or to confront Petitioner. Petrucci later testified that he did not know that Kidrick brought along a handgun.

When Kidrick and Petrucci arrived at the Relax Inn, Petitioner and McGuire were walking in the parking lot, and the two children, Christopher and Trejon, were checking on Moneypenny. Shortly after exiting Petrucci's vehicle, Kidrick was struck in the forehead by a single bullet fired by Petitioner. Kidrick fell to the pavement, and his handgun was later found beside him. Petitioner fled the scene on foot. A critical issue put before the jury at trial was whether Petitioner or the victim, Ronald L. Kidrick, was the first to pull out a handgun at the scene. The eyewitnesses to the shooting were McGuire and 6 year-old Trejon. Trejon testified that he thought his father, Kidrick, and Petitioner were talking quietly just before the shooting and he saw his father with a gun in his hand when he was shot. On cross-examination by the defense, Trejon testified that he remembered telling the prosecuting attorney that his father pulled his gun first. McGuire testified that Kidrick pulled his gun first and Petitioner pulled a gun and shot after being threatened. On cross-examination by the prosecution, McGuire testified that he is a close friend with Petitioner and that they had briefly talked about the incident when they were both in jail. Neither Moneypenny, who was apparently unconscious, nor Mary Davis saw the shooting. Christopher, age 12, and Chris Petrucci heard the shot but were looking elsewhere at that moment. Kidrick was transported by ambulance to City Hospital, Inc., in Martinsburg and died several hours later in the intensive care unit. The cause of death was a single gunshot wound to the head. It was determined that Kidrick had been consuming alcohol and cocaine.

On September 7, 2005, Petitioner was arrested in the State of Maryland for the shooting of Kidrick. During the drive back to West Virginia, the appellant made an unsolicited statement to the police officers to the effect that he had not wanted any trouble and didn't know why Kidrick wanted to start something, so Petitioner "did what he had to do."

(Id. at 101-03.) Subsequently, the trial court sentenced Petitioner to a determinate sentence of forty (40) years and directed him to pay restitution of $17,272.36 for the victim's medical expenses. (Id. at 98.) Petitioner was re-sentenced on September 24, 2007 in order to allow for an appeal. (Id.)

## B.     Direct Appeal to the West Virginia Supreme Court of Appeals

Petitioner filed a petition for appeal of his conviction and sentence to the West Virginia Supreme Court of Appeals ("WVSCA") on January 24, 2009. (Id.) On appeal, Petitioner raised the following claims for relief:

1. Whether the Circuit Court committed reversible error in denying Petitioner's motion to dismiss for Brady violations;

2. Whether the Circuit Court committed reversible error in denying Petitioner's motion to dismiss for misconduct before the grand jury;

3. Whether the Circuit Court committed reversible error in permitting the State to place police records in evidence over hearsay objection;

4. Whether the Circuit Court committed reversible error in permitting the state to introduce Rule 404(b) evidence as to unrelated acts;

5. Whether the Circuit Court committed reversible error in denying Petitioner's mid-trial motion for acquittal;

6. Whether the Circuit Court committed reversible error in denying Petitioner's motion for acquittal at the close of evidence;

7. Whether the Circuit Court committed reversible error in permitting the first-degree murder charge to go to the jury when there was no evidence of premeditation;

8. Whether the Circuit Court committed reversible error in denying Petitioner's motion for a new trial or mistrial; and

9. Whether the Circuit Court committed reversible error in sentencing Petitioner to a disproportionate sentence of forty (40) years.

(Id. at 9.) On November 16, 2009, the WVSCA affirmed Petitioner's conviction and sentence in a

published opinion.  State v. Grimes, 226 W. Va. 411, 701 S.E.2d 449 (2009).

## C.    State Habeas Proceedings

Petitioner filed a *pro se* habeas petition for state post-conviction relief in the Circuit Court

of Berkeley County.  Counsel was appointed, who filed a Petition for Writ of Habeas Corpus and

Request for Evidentiary Hearing on May 22, 2012.  (Docket No. 21-1 at 63-95.)  That petition

alleged the following ground for relief:

1. Trial and appellate counsel were ineffective;

2. Petitioner was unconstitutionally denied bond;

3. Petitioner's due process rights were violated when the State made inappropriate and prejudicial comments to the jury;

4. Petitioner's due process rights were violated because the evidence was insufficient to sustain a guilty verdict;

5. Petitioner's sentence violated the Eighth Amendment to the United States Constitution and Article III of the West Virginia Constitution;

6. The Circuit Court committed reversible error by admitting evidence of Petitioner's altercation with Moneypenny;

7. Petitioner's due process rights were violated by the chief investigating officer's destruction of his notes;

8. The Circuit Court committed reversible error when it rejected the agreed-upon plea agreement that would have resulted in a sentence of twelve (12) years;

9. The Circuit court committed reversible error when it permitted witnesses to testify even though their criminal histories had only been disclosed moments before their testimony; and

10. The cumulative effect of these errors violated his due process rights.

(Id.) On November 1, 2012, the Circuit Court entered an Order denying Petitioner's petition for state

post-conviction relief.  (Id. at 97-117.)

Petitioner appealed the denial of post-conviction relief to the WVSCA.  On appeal, he raised the following assignments of error:

1.  The Circuit Court committed reversible error by summarily dismissing Petitioner's petition without conducting an evidentiary hearing;

2.  The Circuit Court committed reversible error by denying the relief requested when the State presented insufficient evidence to sustain a conviction;

3.  The Circuit Court committed reversible error by denying the relief requested when Petitioner received ineffective assistance of counsel;

4.  The Circuit Court committed reversible error by denying the relief requested when Petitioner was denied pretrial bond;

5.  The Circuit Court committed reversible error by denying the relief requested when the State made improper comments to the jury;

6.  The Circuit Court committed reversible error by denying the relief requested when Petitioner received an unduly harsh sentence;

7.  The Circuit Court committed reversible error by denying the relief requested when the Court improperly admitted certain Rule 404(b) evidence;

8.  The Circuit Court committed reversible error by denying the relief requested when the investigating officers acted improperly;

9.  The Circuit Court committed reversible error by denying the relief requested when it rejected Petitioner's plea agreement;

10.  The Circuit Court committed reversible error by denying the relief requested when it allowed improper witness testimony at trial; and

11.  The Circuit Court committed reversible error by denying the relief requested based on the cumulative effect of error.

(Id. at 122.)  The WVSCA denied Petitioner's appeal by memorandum decision issued on November 3, 2013.  (Id. at 160-63.)  The instant petition followed.

**D.** **Petitioner's Federal Habeas Corpus Claims**

In his petition, Petitioner raises the following grounds for relief:

1. Ineffective assistance of trial and appellate counsel;

2. Denial of pre-trial bond;

3. Prosecutorial misconduct/violation of due process rights when the prosecutor made inappropriate and prejudicial comments to the jury;

4. Violation of due process rights because evidence was insufficient to sustain a conviction;

5. Excessive sentence;

6. Trial court error by admitting improper evidence under Rule 404(b);

7. Violation of due process rights from the chief investigating officer's actions;

8. Trial court violated the right to enter a binding plea for a twelve (12)-year sentence; and

9. Trial court error by failing to bar the State's witnesses from testifying after the State failed to provide their criminal histories.

(Docket No. 6 at 7-20.)

**E.** **Respondent's Motion for Summary Judgment**

Respondent contends that Petitioner's petition must be dismissed because:

1. Petitioner has failed to exhaust State court remedies requiring dismissal of Petitioner's unexhausted claim; and

2. Notwithstanding Petitioner's failure to exhaust State court remedies, his claims for federal relief should be rejected on the merits.

(Docket No. 22 at 7-24.)

**F.** **Petitioner's Response**

In his response, Petitioner reiterates the arguments made in his petition.  (Docket No. 33.)

He further admits that he failed to exhaust his one claim of ineffective assistance of counsel and asserts that he is withdrawing that claim from the Court's consideration. (Docket No. 31.)

## II.   Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

When considering a motion for summary judgment, the Court must do so under the constraints imposed by the habeas statute. 28 U.S.C. § 2254(d), which was adopted as part of the Anti-terrorism and Effective Death Penalty Act of 1996 (the "AEDPA") provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the Supreme Court held that under the

"contrary to" clause, a federal court may grant a writ of habeas corpus with respect to claims adjudicated on the merits in state court only if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) if the state court decides a case differently from the Supreme Court on a set of materially indistinguishable facts. The Court further held that under the "unreasonable application" test, a federal court may grant a writ of habeas corpus with respect to a claim adjudicated on the merits in state court only if the state court identifies the correct governing principle from the Supreme Court's decision, but unreasonably applies that principle to the facts of the prisoner's case. Id. at 413.

As these principles make clear, § 2254(d) imposes a powerful limit on the relitigation of claims that have already been rejected by state courts:

> [Section 2254(d)] preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. Jackson v. Virginia, 443 U.S. 307, 332 n.5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Harrington v. Richter, 562 U.S. 86, __, 131 S. Ct. 770, 786-87 (2011). Moreover, the AEDPA contains a presumption that a state court's factual findings are correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). This standard "reflects Congress's view that there is no reason for a do-over

in federal court when it comes to facts already resolved by state tribunals." Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010). Accordingly, courts should not "casually cast aside a state court's factual findings." Id.

### III. Analysis

**A. Exhaustion**

A petition for a writ of habeas corpus is not a substitute for pursuing state judicial remedies. See 28 U.S.C. § 2254(b). Therefore, such a petition should not be entertained unless the petitioner has first exhausted his state remedies. Baldwin v. Reese, 541 U.S. 27, 29 (2005). To exhaust state remedies, a habeas petitioner must fairly present the substance of his claim to the state's highest court. Spencer v. Murray, 18 F.3d 237, 239 (4th Cir. 1994). "A claim is fairly presented when the petitioner presented to the state courts the substance of his federal habeas corpus claim. The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined." Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997).

> A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief . . . by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'

Baldwin, 541 U.S. at 32; see also Howell v. Mississippi, 543 U.S. 440, 444 (2005).

In West Virginia, exhaustion of state remedies is accomplished by a petition raising the federal issue on direct appeal from his conviction or in a post-conviction state habeas corpus proceeding followed by an appeal to the WVSCA. See Moore v. Kirby, 879 F. Supp. 592, 593 (S.D. W. Va. 1995); see also Bayerle v. Godwin, 825 F. Supp. 113, 114 (N.D. W. Va. 1993). A federal court may only consider those issues the petitioner presented to the state court, and "[a]n applicant

shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by an available procedure, the question presented." 28 U.S.C. § 2254(c). In addition, it is the petitioner's burden to demonstrate that he has exhausted his state judicial remedies. Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998). "The exhaustion requirement is not satisfied if the petitioner presents new legal theories or factual claims for the first time in his federal habeas petition." Id.

As his first ground for dismissing this action, Respondent states that one of Petitioner's claims of ineffective assistance of counsel has not been exhausted in State court. Specifically, Respondent notes that "Petitioner has failed to exhaust the claim that he was denied ineffective assistance of counsel when counsel failed to make a timely objection to the State calling a witness after the State did not properly disclose the criminal history of said witness." (Docket No. 22 at 7.) A review of the record reveals that while Petitioner did raise this claim in his state post-conviction petition, he never presented it to the WVSCA. Given this, the undersigned finds that Petitioner has not properly exhausted this claim of ineffective assistance of counsel.

When a petition contains both exhausted and unexhausted claims, the petition is considered to be "mixed" and must either be dismissed in its entirety, or a petitioner must sever the unexhausted claims. Rose v. Lundy, 455 U.S. 509, 511 (1982). In his one response, Petitioner acknowledges that this claim of ineffective assistance of counsel has not been exhausted. (Docket No. 31.) Accordingly, he "withdraw's [sic] this ONE unexhausted Ground, [ONLY] and Moves the Court to grant him relief on all the remaining grounds." (Id. at 1-2.)

In light of Petitioner's acknowledgment that this claim is unexhausted, the undersigned **RECOMMENDS** that Petitioner's response be deemed a request to withdraw his unexhausted

claim, and the same be granted.[1]  Accordingly, the undersigned now proceeds to the merits of Petitioner's exhausted claims.

## B.      Ineffective Assistance of Counsel

The Supreme Court has set forth a two-prong test for determining whether a convicted defendant's claim of ineffective assistance of counsel warrants the reversal of his conviction. Strickland v. Washington, 466 U.S. 668, 687 (1984).  First, "the defendant must show that counsel's performance was deficient."  Id.  Second, "the defendant must show that the deficient performance prejudiced the defense."  Id.  These two prongs are commonly referred to as the "performance" and "prejudice" prongs.  Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992).

To satisfy the "performance" prong, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment."  Strickland, 466 U.S. at 687.  However, a reviewing court does not "grade" trial counsel's performance, and there is a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance."  Carter v. Lee, 283 F.3d 240, 249 (4th Cir. 2002). Essentially, the reviewing court must not "second-guess" counsel's performance and must "evaluate counsel's performance 'from counsel's perspective at the time.'" Hunt v. Lee, 291 F.3d 284, 289 (4th Cir. 2002).  Furthermore, the standard of reasonableness is objective, not subjective.  See Strickland, 466 U.S. at 688.  "'Deficient performance' is not merely below-average performance; rather, the attorney's actions must fall below the wide range of professionally competent performance."  Griffin v. Warden, Md. Corr. Adj. Ctr., 970 F.2d 1355, 1357 (4th Cir. 1992).

---

[1] In any event, the record establishes that trial counsel did object to the State calling witness John Grantham without first supplying his criminal history.  (Docket No. 6-2 at 13.)

To satisfy the "prejudice" prong, the defendant must demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. Therefore, if counsel's errors have no effect on the judgment, the conviction should not be reversed. See id. at 691. The Fourth Circuit has recognized that if a defendant "cannot demonstrate the requisite prejudice, a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297.

The Fourth Circuit has set forth two categories of decisions made by trial counsel. First, there are "personal" decisions that require consent from the defendant, such as the decision to enter a guilty plea, the decision to waive a trial by jury, the decision to appeal, and the decision of whether to testify at trial. See Sexton v. French, 163 F.3d 874, 885 (4th Cir. 1998). The second category includes decisions that "'primarily involve trial strategy and tactics,' such as 'what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed.'" Id. (quoting United States v. Teague, 953 F.2d 1525, 1531 (11th Cir. 1992)). Accordingly, "[t]here is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." Harrington v. Richter, 131 S. Ct. 770, 790 (2011) (citations and internal quotation marks omitted).

When reviewing claims of ineffective assistance under § 2254(d), as modified by the AEDPA,

> [t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." A state court must be granted a

13

deference and latitude that are not in operation when the case involves review under the Strickland standard itself.

Harrington, 562 U.S. at __, 131 S. Ct. at 785. Section 2254, as amended by the AEDPA, is meant to be a high bar because it deals with claims that have already been litigated in state court. Id. at __, 131 S. Ct. at 786. Accordingly, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. 63, 71 (2003)). With this standard in mind, the Court will now consider Petitioner's four exhausted allegations regarding ineffective assistance of counsel.

### 1.    Ineffective Assistance of Trial Counsel

Petitioner first asserts that "trial Counsel Homer Speker [sic], unduly prejudiced the jury when he inappropriately response [sic] during Court, which his emotions effected [sic] his judgement [sic] and representation of the case." (Docket No. 6 at 8-9.) As to this claim, the State habeas court wrote:

> Petitioner's first contention regarding the prejudicial remarks before the jury is clearly insufficient to meet the burden. The record shows that the Petitioner's counsel got into a dispute during trial with the Assistant Prosecuting Attorney over whether a *curriculum vitae* was disclosed. The trial court, outside the presence of the jury, admonished counsel telling them to behave. The issue was resolved and trial resumed. . . . Yet, as noted by the Respondent, Petitioner shows neither that counsel's conduct was unreasonably deficient nor that, but for the conduct, the outcome of the trial would have been different. . . . In fact, it appears clear from a review of the transcript that neither cam be shown.

(Docket No. 6-2 at 12.) Upon review of the record, the State courts were correct that Petitioner has not satisfied either prong of Strickland. Accordingly, the undersigned finds that the State's denial of this claim was neither contrary to nor an unreasonable application of federal law, and the claim should be dismissed.

Second, Petitioner claims that trial counsel "Steve Greenbaum did improperly cross examine

witness Dr. Vargo regarding the cause of death, inflaming the jury about the manner of brain functions." (Docket No. 6 at 9.) As to this claim, the State habeas court wrote:

> Petitioner contends that counsel's cross examination overly emphasized some facts and that it harmed the credibility of Petitioner's case. However, the State's direct examination of Dr. Vargo, a neurologist, concerned the death of Mr. Kidrick, who was declared to be "brain dead" although he still had certain bodily functions. . . . So, trial counsel's cross-examination necessarily explored this issue further since the jury would have to make the factual determination of how Kidrick died–from the shooting or from some subsequent intervening cause. . . . In any case, Petitioner neither shows that counsel's conduct was unreasonably deficient nor that, but for the conduct, the outcome of the trial would have been different. . . . In fact, this is exactly the type of decision which involves "strategy, tactics and arguable courses of action. . . . So, it should be deemed effective.

(Docket No. 6-2 at 13.) In his instant petition, Petitioner has merely restated his claim, and has not shown that the State's denial of this claim was either contrary to or an unreasonable application of the Strickland standard. Therefore, Petitioner's claim should be dismissed.

Next, Petitioner alleges that counsel "did not properly cross examine witness Mary Davis" because counsel "did not establish on cross examination that Petitioner knew [the victim] was a violent man who his [sic] Ms. Davis." (Docket No. 6 at 10.) The State habeas court noted that "trial counsel was permitted, over objection of the State to cross-examine Davis about her violent relationship with Kidrick. . . . This was in the context of Ms. Davis's direct testimony about a 'fighting' relationship with Kidrick. . . . So, some type of questioning regarding the violent relationship was done." (Docket No. 6-2 at 14.) In any event, Petitioner has not shown a reasonable probability that the outcome of his trial would have been different if the jury heard this additional testimony. Upon review of the record, Petitioner has not shown that the State's denial of this claim was either contrary to or an unreasonable application of the Strickland standard. Therefore, Petitioner's claim should be dismissed.

Finally, Petitioner asserts that "trial counsel failed to obtain expert witness to support his defense that the victims [sic] drug use of cocaine and intoxication contributed to his behavior on the night in question." (Docket No. 6 at 10.) The State habeas court noted that "the amount of 'emphasis' on which facts that counsel *did* put before the jury, is a matter of strategic [sic] and tactics. So, it should be deemed effective." (Docket No. 6-2 at 14.) The WVSCA agreed. (Docket No. 6-1 at 4.) In his instant petition, Petitioner has merely restated his claim, and has not shown that the State's denial of this claim was either contrary to or an unreasonable application of the <u>Strickland</u> standard. Therefore, Petitioner's claim should be dismissed.

### 2. Ineffective Assistance of Appellate Counsel

Petitioner also asserts that appellate counsel was ineffective because counsel "failed to raise the isses [sic] of suffociency [sic] of evidence as it only comprised in full one (1) page of said appeal." (Docket No. 6 at 20.) The right to effective assistance of counsel extends to a defendant's first appeal as of right. <u>Evitts v. Lucey</u>, 469 U.S. 387, 396-97 (1985). The standard for appellate counsel is the same as for trial counsel. <u>See</u> <u>Bell v. Jarvis</u>, 236 F.3d 149, 164 (4th Cir. 2000). On collateral review, however, appellate counsel is accorded the "presumption that he decided which issues were most likely to afford relief on appeal." <u>Pruett v. Thompson</u>, 996 F.2d 1560, 1568 (4th Cir. 1993).

Moreover, "[c]ounsel is not obligated to assert all nonfrivolous issues on appeal." <u>Bell</u>, 236 F.3d at 164; <u>see also</u> <u>Jones v. Barnes</u>, 463 U.S. 745, 751 (1983). Instead, "[t]here can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review." <u>Jones</u>, 463 U.S. at 752. "Indeed, winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence

of incompetence, is the landmark of effective advocacy." Bell, 236 F.3d at 164. Although it is "still possible to bring a Strickland claim based on counsel's failure to raise a particular claim" on direct appeal, demonstrating that counsel was incompetent for failing to do so will be difficult. Smith v. Robbins, 528 U.S. 259, 288 (2000). "Generally only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986).

As to this claim, the State habeas court found:

> The Court notes that sufficiency of the evidence was briefed and argued by appellate counsel. Furthermore, the Supreme Court of Appeals of West Virginia, in a published opinion, specifically considered the sufficiency of the evidence based upon the arguments of counsel and the record. State v. Grimes, 226 W. Va. at 421. So, appellate counsel effectively drew the Supreme Court's attention to the issue. Again, the manner in which a particular argument is made is exactly the type of decision which involves "strategy, tactics and arguable courses of action." Syl. Pt. 21, State v. Thomas, 157 W. Va. 640. So, it should be deemed effective. Id.

(Docket No. 6-2 at 15.) The WVSCA affirmed. (Docket No. 6-1 at 4.) In the instant petition, Petitioner has done nothing more than restate his claim. Upon review of the record, the undersigned finds that the State's denial of his claim was neither contrary to nor an unreasonable application of federal law. Therefore, Petitioner's claim that appellate counsel was ineffective should be dismissed.

## C.     Denial of Pre-Trial Bond

As his second claim for relief, Petitioner asserts that his rights were violated when he was denied pre-trial bond. (Docket No. 6 at 12-13.) Specifically, Petitioner alleges that he "had a valid self defense case and that he would not be a danger should he be released upon bond." (Id. at 13.)

The State habeas court noted that Petitioner had waived this claim because he failed to raise in on direct appeal. (Docket No. 6-2 at 15.) Notwithstanding his waiver, the State habeas court further stated:

> A defendant under indictment for murder is not entitled to bail. W. Va. Code § 62-1C-1(a). Pre-trial admission to bail, in this circumstance, is discretionary with the court. Syl. Pt. 1, State ex rel. Ghiz v. Johnson, 155 W. Va. 186, 183 S.E.2d 703 (1971). As noted in Findings of Fact, *supra*, Petitioner was indicted for murder. The trial court denied bail because of Petitioner's risk of flight and criminal history. See, 06-F021 Order, 3/2/06. So, bail was properly denied.

(Id. at 16.) The WVSCA adopted this reasoning. (Docket No. 6-1 at 4.)

"Excessive bail shall not be required, nor excessive finds imposed, nor cruel and unusual punishments inflicted." U.S. Const., amend. VIII. The Eighth Amendment applies to the states through the Fourteenth Amendment. See Furman v. Georgia, 408 U.S. 238 (1972). "However, the United States Constitution does not establish an absolute right to bail, nor does federal statutory law provide a right to bail in state criminal cases." Odom v. Smalls, C.A. No. 3:09-0629-PMD, 2009 WL 3805594, at *3 (D.S.C. Nov. 12, 2009). "The Eighth Amendment addresses pretrial release by providing merely that '[e]xcessive bail shall not be required.' This Clause, of course, says nothing about whether bail shall be available at all." United States v. Salerno, 481 U.S. 739, 752 (1987); see also Carlson v. Landon, 342 U.S. 524, 545-46 (1952) ("Indeed, the very language of the Amendment fails to say all arrests must be bailable."). Accordingly, because Petitioner had no federal right to be entitled to bail, this claim is without merit and must be dismissed.

## D. Prosecutorial Misconduct

As his third claim for relief, Petitioner asserts that the State committed prosecutorial misconduct by making "several inappropriate and prejudicial comments to the jury." (Docket No. 6 at 15.) Specifically, Petitioner alleges that the prosecutor "unreasonably attempted to play on the jury's sympathies by discussing irrelevant information regarding certain witnesses" and "improperly referred to the victim's concern for his children which counsel objected to." (Id.)

"When asserting a prosecutorial misconduct claim, a defendant bears the burden of showing

18

(1) that the prosecutors engaged in improper conduct, and (2) that such conduct prejudiced the defendant's substantial rights so as to deny the defendant a fair trial." United States v. Alerre, 430 F.3d 681, 689 (4th Cir. 2005). The "touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips, 455 U.S. 209, 219 (1982). It is "'not enough that the prosecutors' remarks were undesirable or even universally condemned.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (citation omitted). Rather, the "relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Id. (quoting Donnelly v. DeChristoforo, 416 U.S. 637 (1974)).

The State habeas court found that Petitioner had waived this claim for relief for failing to raise it on direct appeal. (Docket No. 6-2 at 16.) The court also found that "a review of the twelve contentions show only minor issues, if any, which would not rise to a constitutional level." (Id.) In his instant petition, other than simply stating the comments that Petitioner believes to be inappropriate, Petitioner has not met his burden of showing how such statements "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly, 416 U.S. at 643. Accordingly, the undersigned recommends that this claim be dismissed.

E.     **Sufficiency of the Evidence**

Petitioner maintains that the "State simply failed to enter suffcent [sic] evidence to sustain a conviction for the crime in which he was charged. The Staes on [sic] witnesses did not support the jury verdict." (Docket No. 6 at 17.) While claims regarding the sufficiency of evidence are cognizable in a federal habeas petition, Jackson v. Virginia, 443 U.S. 307, 320-21 (1979), Petitioner bears the burden of demonstrating that "after viewing the evidence in the light most favorable to the

prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. In reviewing the evidence, the Court must defer to the jury's determination of a witness' credibility and presume that the jury resolved any conflicts in the evidence in favor of the prosecution. See Wright v. West, 505 U.S. 277, 296 (1992).

As noted by the state habeas court, Petitioner raised this claim on direct appeal. (Docket No. 6-2 at 17.) The WVSCA noted the following:

> Viewing the evidence in the light most favorable to the State, the jury had before it evidence directly and circumstantially inculpating the appellant including: (1) the appellant shot Ronald Kidrick in the head; (2) Kidrick died as a result of that gunshot wound; (3) shortly before the shooting, the appellant beat Moneypenny with his fists and a gun in front of Kidrick's children; (4) one of the children called Kidrick: (5) the appellant told Kidrick "you want some come and get some"; (6) the appellant then called an associate, Ziggy, to the motel; (7) Kidrick arrived from Shepherdstown shortly thereafter, and the appellant shot him; and (8) the appellant immediately fled the scene.

Grimes, 226 W. Va. at 421, 701 S.E.2d at 459. The WVSCA further concluded:

> A review of the testimony and exhibits at trial leads this Court to the inexorable conclusion that the appellant's culpability or self-defense with regard to the events on the morning of July 30, 2005, were for the jury to decide. In addition to the matters emphasized by the State, the facts were in sharp conflict concerning whether Kidrick went to the Relax Inn to pick up the children or to confront the appellant. Similarly, there was a question of fact concerning whether the appellant was actually in the process of leaving the motel before Kidrick's arrival.

Id.

Given these findings, the State habeas court denied Petitioner's claim. (Docket No. 6-2 at 17.) Upon review of the record, Petitioner has not met his burden of demonstrating that "after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319. Accordingly, the undersigned recommends that this claim be dismissed.

## F.    Excessive Sentence

As his sixth claim for relief, Petitioner asserts that "the sentence he is serving is grossly disproportionate to his acts as he is actually innocent of the crimes for which he is charged." (Docket No. 6 at 19.)  In his state habeas petition, Petitioner raised this claim as a violation of both Article III, Section 5, of the Constitution of West Virginia and the Eighth Amendment to the United States Constitution.  The State habeas court denied Petitioner's claim because of the WVSCA's previous adjudication of the same claim.  (Docket No. 6-2 at 17.)  On direct appeal, the WVSCA stated:

> Finally, the appellant contends that the imposition of the maximum term of 40 years in the penitentiary under W. Va. Code, 61-2-3 (1994), applicable to murder of the second degree, violates standards of proportionality. . . .
>
> . . .: "The Supreme Court of Appeals reviews sentencing orders, including orders of restitution made in connection with a defendant's sentencing, under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." . . .  Moreover, . . . this Court stated: "[S]entences imposed by the trial court, if within the statutory limits and if not based on some impermissible factor are not subject to appellate review." . . .
>
> Here, the appellant shot and killed Kidrick in the presence of 12 year-old Christopher and 6 year-old Trey.  Kidrick was Trey's father.  Immediately after the shooting, the appellant fled the scene.  Earlier that morning, the appellant, using a handgun, assaulted Moneypenny in the children's presence.  A motion to reconsider the appellant's sentence was denied by the Circuit Court by order entered on April 5, 2007.  The sentence was within statutory limits.  Accordingly, this Court concludes that the decision of the Circuit Court concerning sentencing is "protected by the parameters of sound discretion." . . .

Grimes, 226 W. Va. at 421-22, 701 S.E.2d at 459-60 (internal citations omitted).

As an initial matter, "[a] state court's sentencing decision and claims arising out of that decision are generally not constitutionally cognizable, unless the sentencing decision exceeds the statutory limits or is wholly unauthorized by law." Laboy v. Carroll, 437 F. Supp. 2d 260, 263 (D. Del. 2006) (citing Bozza v. United States, 330 U.S. 160, 166 (1947)).  Furthermore, a sentence

imposed within statutory limits is not generally subject to habeas review.  See Townsend v. Burke, 334 U.S. 736, 741 (1948).  Here, Petitioner was sentenced within the statutory limits, and the statute under which Petitioner was sentenced has not been held to be unconstitutional.

In addition to failing to assert a valid challenge to state law, Petitioner's argument also fails to state a valid challenge under the Eighth Amendment as to the proportionality of his sentence.  "The final clause [of the Eighth Amendment] prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed."  Solem v. Helm, 463 U.S. 277, 284 (1983)  "Outside the context of capital punishment, successful challenges to the proportionality of particular sentences has been exceedingly rare."  Rummel v. Estelle, 445 U.S. 263, 272 (1980) (life in prison with the possibility of parole for a three time offender whose crimes involved "the fraudulent use of a credit card to obtain $80 worth of goods or services," "passing a forged check in the amount of $28.36" and "obtaining $120.75 by false pretenses" did not violate the Eighth Amendment).

In Solem, the Supreme Court found that a sentence of life in prison without the possibility of a parole for a seventh nonviolent felony violated the Eighth Amendment.   The Supreme Court noted that the Eighth Amendment "prohibits . . . sentences that are disproportionate to the crime committed." Id. at 284.  The Supreme Court explained that the following three factors may be relevant to determine whether a sentence is so disproportionate that is violates the Eighth Amendment: (i) the gravity of the offense and the harshness of the penalty;  (ii) the sentences imposed on other criminals in the same jurisdiction;  and (iii) the sentences imposed for commission of the same crime in other jurisdictions." Id. at 292.  The Supreme Court did not overrule Rummel. The Court stated that "Rummel did reject a proportionality challenge to a particular sentence.   But

22

since the Rummel Court--like the dissent today--offered no standards for determining when an Eighth Amendment violation has occurred, it is controlling only in a similar factual situation. Here the facts are clearly distinguishable. Whereas Rummel was eligible for a reasonably early parole, Helm, at age 36, was sentenced to life with no possibility of parole." Id. at 303, n.32.

Years later, in Harmelin v. Michigan, 501 U.S. 957 (1991), the Supreme Court again addressed the proportionality issue in a case involving a defendant who had no prior felony convictions and was convicted of possession of 672 grams of cocaine. The Supreme Court determined that the defendant's mandatory life sentence without the possibility of parole did not violate the Eighth Amendment. However, the justices disagreed on why the sentence did not violate the Eighth Amendment. Justice Scalia joined by The Chief Justice found that " the proportionality principle was "an aspect of our death penalty jurisprudence, rather than a generalizable aspect of Eighth Amendment law." Id. at 994. Thus, he would have declined to apply gross disproportionality principles except in reviewing capital sentences. Id. However, Justice Kennedy joined by Justice O'Connor and Justice Souter recognized that "[t]he Eighth Amendment proportionality principle also applies to noncapital sentences." Id. at 997. They determined that the following principles should be examined to determine whether an Eighth Amendment violation had occurred: "the primacy of the legislature, the variety of legitimate penological schemes, the nature of our federal system, and the requirement that proportionality review be guided by objective factors--inform the final one: The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." Id. at 1001. Justice Kennedy also found that Solem did not require a comparative analysis "within and between jurisdictions." Id. at 1004-1005. Instead, Justice Kennedy stated "that intrajurisdictional and

interjurisdictional analyses are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." Id. at 1005.

In Ewing v. California, 538 U.S. 11 (2003), the Supreme Court applied the proportionality principles expounded by Justice Kennedy to a non-capital sentence, and affirmed a sentence of 25 years to life under California's three strikes law for the defendant who had been convicted of felony grand theft for stealing golf clubs valued at $1200.00. In Ewing, Justice O'Conner adopted Justice Kennedy's concurrence in Harmelin and found that because Ewing had been previously convicted of four felonies (first degree robbery and three residential burglaries) his sentence was not grossly disproportionate and did not violate the Eighth Amendment. Justice O'Connor stated that the Eighth Amendment does not prevent the California legislature from deciding that protecting the public requires incarcerating individuals who have been convicted of at least one serious or violent crime.

The same day that the Supreme Court decided Ewing, it also decided Lockyer v. Andrade, 538 U.S. 63 (2003), a § 2254 case involving California's three strike law. Andrade stole $150.00 worth of videotapes from two different stores. He was convicted of two felony counts of petty theft with a prior conviction. As a result of his prior criminal history, he was sentenced to two consecutive terms of 25 years to life in prison. The California Court of Appeals affirmed Andrade's sentence of two consecutive terms of 25 years to life in prison and found that such sentence did not violate the Eighth Amendment. In Andrade, the Supreme Court recognized that its "precedents in this area have not been a model of clarity" and that "[its] cases exhibit a lack of clarity regarding what factors may indicate gross disproportionality." Id. at 72. Thus, the Supreme Court determined that "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable

application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case."  Id.  The Supreme Court determined that the state court's decision was not contrary to or an unreasonable application of Supreme Court law.

Although long, Petitioner's sentence does not present an "extraordinary case" in light of the Supreme Court's history with respect to review of state sentences.  Furthermore, the undersigned notes that under Fourth Circuit precedent, "outside the context of a capital sentence, a proportionality review is necessary only with respect to sentences of life imprisonment without the possibility of parole." Beverati v. Smith, 120 F.3d 500, 504-05 (4th Cir. 1997).  Accordingly, Petitioner has failed to state a claim for habeas relief, and his claim should be dismissed.

## G.    **Brady Violation**

As his seventh claim for relief, Petitioner asserts that his due process rights were violated when the chief investigative officer destroyed his "notes concerning his initial interviews with eye witnesses in this case." (Docket No. 6 at 19.)  Petitioner alleges that he was "not able to call eye witnesses because of the Brady violation by the investigator." (Id.)

A defendant's due process rights are violated when the prosecution withholds exculpatory or impeachment evidence that is material to the defendant's guilt or punishment. Brady v. Maryland, 373 U.S. 83, 87 (1963).  Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. United States v. Bagley, 473 U.S. 667, 682 (1985).

The State habeas court noted that Petitioner's claim had been considered by the WVSCA on direct appeal and therefore determined that the claim had been "previously finally adjudicated and

should be denied." (Docket No. 6-2 at 18-19.)  On appeal, the WVSCA stated:

> With regard to Captain Bohrer's field notes, the appellant relies on Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), which encompasses the broad principle that the suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material either to the accused's guilt or punishment. . . .  As subsequently held by this Court in syllabus point 4 of State v. Hatfield, 169 W. Va. 191, 286 S.E.2d 402 (1982): "A prosecution that withholds evidence which if made available would tend to exculpate an accused by creating a reasonable doubt as to his guilt violates due process of law under Article III, Section 14 of the West Virginia Constitution." . . .  Thereafter, in State v. Youngblood, 221 W. Va. 20, 650 S.E.2d 119 (2007), this Court noted that, although Brady addressed only exculpatory evidence, the Supreme Court of the United States later expanded the doctrine to include impeachment evidence. . . .

> Syllabus point 2 of Youngblood holds:

>> There are three components of a constitutional due process violation under Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), and State v. Hatfield, 169 W. Va. 191, 286 S.E.2d 402 (1982): (1) the evidence at issue must be favorable to the defendant as exculpatory or impeachment evidence; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must have been material, i.e., it must have prejudiced the defense at trial.

> Syl., pt. 2, State v. Hawk, 222 W. Va. 248, 664 S.E.2d 133 (2008); syl. pt. 3, State v. Farris, 221 W. Va. 676, 656 S.E.2d 121 (2007).

> In this case, the appellant asserts that Captain Bohrer's field notes, made while speaking to the children at the motel on the morning of the shooting, no doubt included a statement by Trey that Kidrick was the first to pull out a weapon in the parking lot.  According to the appellant, the account of that statement as reflected in Captain Bohrer's notes would have been helpful to the appellant as probable exculpatory or impeachment evidence, especially in the context of self-defense.  Thus, the notes having been discarded or destroyed, the appellant contends that the indictment should have been dismissed.

> As indicated above, the Circuit Court conducted an evidentiary hearing and subsequently upheld the indictment in the pre-trial order of October 3, 2006. Referring to the field notes, the Circuit Court emphasized that "the witness or witnesses who allegedly possess the possibly exculpatory evidence are available to testify at trial." Thereafter, the issue concerning the destruction of the field notes was submitted to the jury.

Looking then to the record, there is nothing in the community of circumstances revealed therein which compels disturbing the conclusion of the Circuit Court. The information in the field notes allegedly provided by Trey was duplicated in the report of Medical Examiner Brining which stated: "Initial reports indicate the deceased [Kidrick] pulled a gun on the boyfriend [the appellant] and the boyfriend then pulled a gun and shot the deceased in the head." Moreover, the value of alleged content of the field notes is marginal. At the time the notes were made, the investigation was in the initial stages. More importantly, Trey, a 6 year-old child, later made additional statements which were contradictory and all of which were made available to the appellant prior to trial. Trey spoke with Sergeant Harmison on July 30, 2005, again with Captain Bohrer on March 23, 2006, and with the Berkeley County prosecutors on July 6, 2006, all with varying results. As characterized by the Circuit Court, the statement to the prosecutors was the first recorded instance in the case of Trey saying that he saw his father, Kidrick, draw his gun first, a statement helpful to the appellant. Finally, an additional witness, Gabriel "Ziggy" McGuire, was available to the appellant. Called by the appellant at trial, McGuire testified that Kidrick was the initial aggressor.

Consequently, this Court is of the opinion that there is no reasonable probability that the result of the proceedings would have been different had Captain Bohrer's field notes been available. This assignment of error is, therefore, without merit.

Grimes, 226 W. Va. at 417-18, 701 S.E.2d at 455-56 (some internal citations omitted).

In his instant petition, Petitioner merely restates the Brady claim that he raised on direct appeal before the WVSCA. Upon review of the record, the undersigned finds that the State's denial of his claim was neither contrary to nor an unreasonable application of federal law. Accordingly, Petitioner's claim for relief pursuant to Brady should be dismissed.

## H.     Non-Cognizable Claims

As his sixth claim for relief, Petitioner asserts that the trial court erred by admitting evidence of Petitioner's fight with Moneypenny over an objection that such evidence was improper under West Virginia Rule of Evidence 404(b). (Docket No. 6 at 19.) As his eighth claim for relief, Petitioner asserts that the trial court erred by not allowing him to enter into a binding plea agreement that called for a sentence of twelve (12) years of incarceration. (Docket No. 6 at 19.) As his ninth

claim for relief, Petitioner alleges that the trial court erred when it "failed to bar the State's witness from testifying after the State failed to provide criminal histories for all of the witnesses." (Id. at 20.) The undersigned has considered these claims together because they all allege trial court error.

Petitioner's "404(b)" claim fails to state a claim for federal habeas relief. State court evidentiary rulings do not rise to the level of due process violations unless they "offend . . . some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." Patterson v. New York, 432 U.S. 197, 202 (1977) (citations omitted). Furthermore, the Fourth Circuit has stated:

> Importantly, in considering federal habeas corpus issues involving state evidentiary rulings, "we do not sit to review the admissibility of evidence under state law unless erroneous rulings were so extreme as to result in a denial of a constitutionally fair proceeding." Burket v. Angelone, 208 F.3d 172, 186 (4th Cir. 2000). "It is only in circumstances impugning fundamental fairness or infringing specific constitutional protections that a federal question is presented." Spencer v. Murray, 5 F.3d 758, 762 (4th Cir. 1993) (internal quotation marks omitted); see also Estelle v. McGuire, 502 U.S. 62, 68 (1991) (explaining that, "[i]n conducting habeas review, a federal Court is limited to deciding whether a conviction violated the constitution, laws, or treaties of the United States").

Barbe v. McBride, 521 F.3d 443, 452 (4th Cir. 2008).

Therefore, Petitioner must show that admission of the challenged evidence "is so extremely unfair that its admission violates fundamental conceptions of 'justice'" in order to demonstrate a violation of due process. Dowling v. United States, 493 U.S. 342, 352 (1990). A review of the record shows that Petitioner has failed to meet this burden. On direct appeal, the WVSCA agreed with the trial court that Rule 404(b) did not apply because

> the beating of Moneypenny was inextricably intertwined with the shooting of Kidrick. As the Circuit Court stated, the episode concerning Moneypenny was allowed "as an intrinsic part of the events of a turbulent evening that had a spill-over effect, as a part of the entire story of the evening[.]" In particular, prior to the shooting of Kidrick, 12 year-old Christopher and 6 year-old Trey were going in and

out of the motel room to check on Moneypenny. That fact accounts for their presence in the vicinity of the parking lot at the moment Kidrick was shot. The beating of Moneypenny was part of the *res gestae*, the context the jury was entitled to hear to have the complete story.

Grimes, 226 W. Va. at 420-21, 701 S.E.2d at 458-59. This evidence was "'at least circumstantially valuable in proving petitioner's guilt' and not a violation of due process." Dowling, 493 U.S. at 353 (citation omitted). Furthermore,

> [t]he issue of whether an admission of uncharged crimes can ever constitute a violation of the Due Process Clause has not been decided by the Supreme Court. See Estelle v. McGuire, 502 U.S. 62, 75 n.5 (1991) ("[W]e express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime.") . . . Consequently, I cannot find a due process violation because to do so would amount to the creation of a new rule of constitutional law, which a federal court is not permitted to do in a habeas corpus proceeding. See Teague v. Lane, 489 U.S. 288, 316 (1989).

Jones v. Conway, 442 F. Supp. 2d 113, 131 (S.D.N.Y. 2006). Accordingly, Petitioner's "404(b)" challenge is not appropriate for review by this Court and should be dismissed.

As noted above, Petitioner also claims that the trial court violated his right to enter a plea and erred by allowing State witnesses to testify when their criminal histories had not been disclosed prior to trial. The State habeas court determined that these claims were not reviewable in habeas because they asserted "general trial error." (Docket No. 6-2 at 19, 20.) This finding is not contrary to or an unreasonable application of federal law.[2] See Estelle, 502 U.S. 67-68 (noting that it is not the province of a federal habeas court to "reexamine state-court determinations on state-law questions"); see also Grundler v. North Carolina, 283 F.2d 798, 802 (4th Cir. 1960).

_____

[2] Petitioner's claim that the trial court rejected his plea is also factually inaccurate. The State habeas court noted that "[t]he record shows that the Petitioner withdrew from a plea agreement to the lesser-included offense of Second Degree Murder when the victim's family objected to the agreed-upon sentence of twelve years." (Docket No. 6-2 at 19.)

## IV.    Recommendation

For the foregoing reasons, the undersigned recommends that Respondent's Motion for Summary Judgment (Docket No. 21) be **GRANTED** and that Petitioner's petition pursuant to 28 U.S.C. § 2254 (Docket No. 1) be **DENIED**.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.  A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge.  Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.  28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to provide a copy of this Report and Recommendation to counsel of record and to mail a copy to the *pro se* Petitioner by certified mail, return receipt requested.

DATED: December 8 , 2014

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE